UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KENDALL CARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18 CV 83 ACL |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Kendall Carr brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Carr's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded to the Commissioner.

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Carr filed his application for benefits on October 27, 2014, claiming that he became unable to work on January 1, 2010. (Tr. 172-80.) In his Disability Report, Carr alleged disability due to developmental disorder, hypothyroidism, attention deficit hyperactivity disorder ("ADHD"), pervasive developmental disorder,[2] autism spectrum disorder, asthma, mild diabetes, impulse control disorder, failure to thrive, mild mental retardation, and abuse of child not otherwise specified. (Tr. 202.) Carr was 20 years of age when he filed his application for benefits. (Tr. 172.) His application was denied initially. (Tr. 71-74.) Carr's claim was denied by an ALJ on April 27, 2017. (Tr. 16-27.) On February 7, 2018, the Appeals Council denied Carr's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Carr argues that the ALJ "erred in assessing an RFC that was not supported by substantial evidence." (Doc. 15 at 8.)

## II. The ALJ's Determination

The ALJ first found that Carr has not engaged in substantial gainful activity since October 27, 2014, the application date. (Tr. 18.) In addition, the ALJ concluded that Carr had the following severe impairments: autism spectrum disorder, intellectual disorder, and pervasive developmental disorder. *Id.* The ALJ found that Carr did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

---

[2]Pervasive developmental disorders ("PDDs") include delays in how a child typically develops, problems with socializing and communicating, trouble when a routine changes, and repetitive movements and behaviors. PDDs are now called autism spectrum disorder. *See* https://www.webmd.com/brain/autism/development-disorder (last visited July 19, 2019).

impairments. (Tr. 19.)

As to Carr's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: is able to perform simple, routine tasks in a work environment free of fast paced productivity requirements involving simple work related decisions with few work place changes. The individual can occasionally interact appropriately with the general public and co-workers.

(Tr. 21.)

The ALJ found that Carr had no past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as laundry worker, machine feeder, manufacturing helper, light cleaner or housekeeper, and light machine tender. (Tr. 26-27.) The ALJ therefore concluded that Carr was not under a disability, as defined in the Social Security Act, since October 27, 2014, the date the application was filed. (Tr. 27.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on October 27, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III. Applicable Law

**III.A. Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a

mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also*

*Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6)

dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work

experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

The ALJ found that Carr had the mental RFC to perform simple, routine tasks in a work environment free of fast paced productivity requirements involving simple work related decisions, with few workplace changes; and could occasionally interact appropriately with the general public and co-workers. (Tr. 21.) The ALJ stated that this determination was supported by the medical, testimonial, and opinion evidence. (Tr. 26.) She further explained as follows:

> The claimant has mild cognitive deficits such that he lives in a supervised environment and works through a sheltered workshop. However, the claimant currently works 22 hours per week, plays video games, and can socialize with others (Exhibit 4E). He completed high school and answered 24 out of 25 questions correctly on the written portion of his driving exam. He does not have to be routinely redirected at work.

*Id.*

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of his limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Carr argues that the ALJ made multiple errors in assessing his mental[3] RFC and, as a result, the RFC determination is not supported by substantial evidence.

By way of background, Carr was adopted at the age of six, after being removed from his biological mother, who had a history of substance abuse and bipolar disorder. (Tr. 263, 327.) Carr resided outside the adoptive home in foster homes and therapeutic programs since the age of 11, secondary to behavioral and emotional issues, including sexually inappropriate behavior and cruelty against animals. *Id.* In May 2010, at the age of sixteen, Carr was residing at a group home with four teenaged boys. *Id.* Prior to that, he resided in a residential treatment facility for three-and-a-half to four years. *Id.* At a May 12, 2010 psychological evaluation, it was noted that Carr demonstrated some "rather severe emotional and social deficits, much of which appeared to be stemming from a form of pervasive developmental disorder, that impairs his social functioning and related thinking and behaviors and attitudes." (Tr. 266.) It was found that Carr required an ongoing degree of structured and therapeutic intervention, and that Carr be monitored for the possibility of schizophrenia-spectrum disorder or bipolar disorder. *Id.*

The ALJ discussed this evidence and acknowledged that Carr "struggled as a child but more recent evidence demonstrates that the claimant has fewer issues and has shown improvement." (Tr. 23.) As examples, the ALJ noted that Carr "is working and does not seek consistent treatment," and "would work more hours but is not offered more." *Id.*

Regarding the recent evidence of Carr's functioning, the ALJ noted Carr's hearing testimony that he lives with two roommates through a program called Trendline Consulting. (Tr. 21, 52.) Carr testified that there is support personnel in the home 24 hours a day. (Tr. 21, 53.) He stated that he "cannot handle isolation because of how he has evolved," and that at one

---

[3] Carr does not dispute the ALJ's findings regarding his physical impairments.

time he had "become more independent from the 24-hour supervision but he could not handle the isolation and ran away, collapsing in a field." (Tr. 22, 64.) Carr reported that he is not able to ride a bike alone but can go for a walk without supervision. (Tr. 22, 65.) He indicated that he occasionally has trouble with his finances. (Tr. 22, 66.) Carr also reported poor relations while living with roommates, including one physical altercation where the roommate tried to choke him. (Tr. 51.) He stated that he gets along "pretty well" with his co-workers, but noted that one of his co-workers blamed the claimant for making the co-worker send "hate-mail." (Tr. 22, 68.) Carr testified that he was currently doing office cleaning and laundry work in a sheltered workshop. (Tr. 22, 60.) He reported that he sometimes "stares into space and loses focus" when working and his supervisors have to redirect him "every now and then, for example two days a week, but not multiple times per day." (Tr. 22, 66-67.) He testified that "sometimes he can go six months without being told to get back on track." (Tr. 22, 67.)

Carr first argues that the ALJ erred in failing to consider the opinion of Carr's supervisor at the structured workshop, Aleshia Brucker. Ms. Brucker completed a questionnaire at the request of Carr's attorney on December 6, 2016. (Tr. 246.) Ms. Brucker stated that Carr "requires *a lot* of supervision and redirection," as he has difficulty staying focused. *Id.* (emphasis in original). She stated that Carr is not able to stay on task without special supervision. *Id.* Ms. Brucker indicated that Carr had difficulty socializing or relating with others on the job. *Id.* He also requires "a great deal of explanations when something changes." *Id.* Ms. Brucker further explained that Carr was in a special employment program through the Department of Mental Health, and expressed the opinion that Carr would not be able to sustain employment "without the assistance of his support staff." *Id.* The ALJ never mentioned Ms. Brucker's opinion.

Ms. Brucker, a non-medical source, provided information about Carr as his current employer regarding his performance of his employment duties. The ALJ must not ignore evidence that may detract from her findings of fact. *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir. 1991); *Delrosa v. Sullivan,* 922 F.2d 480, 484 (8th Cir. 1990); *Fowler v. Bowen,* 866 F.2d 249, 252 (8th Cir. 1989). Evidence from non-medical sources should be evaluated using factors such as the nature and extent of the relationship with the plaintiff and whether the evidence is consistent with other credible evidence in the record. *See* SSR 2006-3p. Ms. Brucker's statement was based on her close working relationship with Carr, and directly contradicted the ALJ's finding that Carr did not have to be routinely redirected at work. As such, the Court finds that the ALJ erred in not considering this evidence.

Carr also argues that the ALJ erred in evaluating the medical opinion evidence. Specifically, he contends that the ALJ improperly discredited the opinion of treating psychiatrist Dr. Liss, and relied instead on the opinion of a non-examining source.

Dr. Jay L. Liss completed a Medical Source Statement-Mental on November 29, 2016, in which he listed Carr's diagnoses as autism spectrum disorder, severity level 1, with accompanying intellectual impairment and without language impairment; and depression due to medical condition with mixed features. (Tr. 395.) Dr. Liss expressed the opinion that Carr was extremely limited in his ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others; markedly limited in his ability to perform activities within a schedule and maintain regular attendance, work in coordination with or proximity to

others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and travel in unfamiliar places or use public transportation; and moderately limited in his ability to remember locations and work-like procedures, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. (Tr. 395-96.)

The ALJ indicated that she was assigning "little weight" to Dr. Liss' opinion, as the evidence "does not support the more extreme limitations." (Tr. 25.) She explained that, although Dr. Liss found Carr will be off task 25 percent or more of the workday, Carr stated that "while he sometimes needs to be directed to get back on track this does not happen on a regular basis." *Id.* The ALJ also cited the following medical evidence: in November of 2014, Carr did not display any attention deficit, hyperactivity, or depression symptoms; in February of 2016, most of his exam findings were normal, including thought process, thought content, judgment, and orientation; and Carr reported that his medication was working well. (Tr. 25.)

Carr argues that the ALJ failed to give good reasons for assigning little weight to Dr. Liss' opinions. "A treating physician's opinion should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) (internal quotation and citations omitted). A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Id.* at 1122-23 (citation omitted). Rather, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more

thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (citation omitted). An ALJ need not give a treating physician's opinion controlling weight when the opinion is based on a claimant's subjective complaints that the ALJ does not find credible. *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citation omitted).

The undersigned finds that the ALJ failed to provide sufficient reasons for assigning little weight to Dr. Liss' opinion. With regard to Carr's testimony cited by the ALJ that he only required redirection by his supervisors twice a week, the Eighth Circuit has recognized that "a claimant's true functional ability may be substantially less than the claimant asserts or wishes." *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001). In this case, as previously discussed, Carr's supervisor at the sheltered workshop indicated that Carr had a very difficult time staying focused, and that she had to provide extensive supervision and redirection. (Tr. 246.) This evidence is consistent with Dr. Liss' opinion that Carr will be off task 25 percent or more of the workday. Further, Carr reported in his Function Report that he needs "constant redirection" due to his difficulty staying on task. (Tr. 215.)

Dr. Liss' opinions are also supported by his own treatment notes. Carr first presented to Dr. Liss on August 4, 2015, at which time he reported that he had recently moved from New Jersey and required a new psychiatrist. (Tr. 392.) Carr was living with adult caretakers. *Id.* His caretaker reported Carr had a history of ADHD. *Id.* Dr. Liss noted that Carr was "unable to focus at work," and that it was affecting his performance. *Id.* Upon examination, Dr. Liss found Carr was fixated on specific hobbies, was distractible, unable to complete multiple instructions, lacked judgment, was unable to multitask, had poor social skills, and had no concept of money. *Id.* He diagnosed Carr with pervasive developmental disorder. (Tr. 393.) At a

February 16, 2016 follow-up appointment, Dr. Liss indicated that Carr had a mild cognitive impairment and was symptomatic for pervasive developmental disorder. (Tr. 391.) The only abnormality Dr. Liss noted on examination was a flat affect. *Id.* Carr was taking Risperdal,[4] which was "working well." *Id.* On June 28, 2016, Dr. Liss indicated that Carr had had a physical altercation with a roommate, and that Carr had a "personal care attendant all day." (Tr. 390.) Carr was "managing his mood most of the time," but had "impaired social skills." *Id.* Dr. Liss further noted that Carr had a restraining order against him for possible stalking. *Id.* On examination, Carr's affect was flat and his insight and judgment were impaired. *Id.* Dr. Liss found that Carr needed counseling. *Id.*

Of all Dr. Liss' examination findings summarized above, the ALJ only mentioned that Carr's examination was mostly normal in February of 2016, and that Carr reported that his medication was working well on this visit. (Tr. 25.) The ALJ did not discuss the extensive symptoms noted by Dr. Liss on Carr's subsequent examination in June 2016, including the occurrence of a physical altercation with a roommate, the fact that Carr required a personal care attendant all day, had impaired social skills, and had a restraining order against him for possible stalking. The only other medical evidence cited by ALJ as inconsistent with Dr. Liss' findings is that Carr did not display any attention deficit, hyperactivity, or depression symptoms during a November 2014 exam. These isolated findings do not detract from Dr. Liss' otherwise supported opinions.

Dr. Liss' opinions are consistent with his own treatment notes, as well as other evidence of record. For example, in addition to the findings discussed above, Carr saw Dr. Chester

---

[4]Risperdal is an antipsychotic drug indicated for the treatment of disorders such as schizophrenia and bipolar disorder. *See* WebMD, http://www.webmd.com/drugs (last visited July 19, 2019).

Sigafoo in February 2012, at the age of seventeen. (Tr. 270-313.) Among Dr. Sigafoo's many findings was that Carr could not be moved to a less supervised setting, required a structured setting to manage his behaviors and prevent a regression, his prognosis was poor, and his "psychopathological conditions" pose a "significant obstacle to him being able to function in society." (Tr. 312-13.) He ultimately concluded that "treatment and supervised care will be something that he will need to continuously be involved in." (Tr. 313.)

The ALJ indicated she was assigning "significant weight" to the opinion of Medical Expert Ricardo Buitrago, Psy.D. (Tr. 24.) Dr. Buitrago provided an opinion after the hearing, based on a review of the record. Dr. Buitrago found that Carr's "mental health condition appears to be non severe." (Tr. 449.) He expressed the opinion that Carr had moderate limitations in his ability to maintain concentration, persistence or pace; and mild limitations in his activities of daily living and ability to maintain social functioning. (Tr. 444.) Dr. Buitrago stated that Carr can perform work activity that requires understanding simple instructions, engaging in simple tasks, maintaining concentration and attention for simple tasks, adapting and responding to changes in the work setting, making simple work related decisions, working with others, and completing a 6 to 8 hour work day and work week without any significant psychologically-based interruptions due to symptoms. (Tr. 451.)

Carr argues that Dr. Buitrago's opinion is internally inconsistent, as he found both that Carr's impairments were non-severe and that they resulted in moderate limitations in his ability to sustain concentration, persistence, or pace. (Tr. 444.) He also notes that, when asked to provide evidence in support of his opinion, Dr. Buitrago cited Dr. Liss' opinion containing marked and extreme limitations in numerous areas of functioning. (Tr. 444.)

Opinions from medical sources who have treated a claimant typically receive more

weight than opinions from one-time examiners or non-examining sources. *See* 20 C.F.R. §§ 404.1527; 416.927. However, the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. *See Prosch v. Astrue*, 201 F.3d 1010, 1012-13 (8th Cir. 2012); *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007).

In this case, the ALJ did not provide good reasons to accord significant weight to the non-examining expert Dr. Buitrago, and discrediting the opinion of treating psychiatrist Dr. Liss. Though some records showed that Carr had no complaints or was doing well on medication, he was in an environment with support personnel in the home 24 hours a day, and worked in a structured workshop setting with constant supervision. *See Hutsell,* 259 F.3d at 712 (ALJ "relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relationship to a claimant's ability to work or to her work-related functional capacity"); *see also Pate-Fires v. Astrue,* 564 F.3d 935, 943 (8th Cir. 2009) (treating physician's notes that a mental disorder is in remission with medication and management therapy did not indicate that the claimant was stable enough to return to work).

## **Conclusion**

In sum, the ALJ erred in weighing the medical opinion evidence, and in failing to consider the findings of Carr's sheltered workshop supervisor. As a result, the mental RFC formulated by the ALJ was not supported by substantial evidence.

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon

remand, the ALJ shall consider all the evidence of record, obtain additional evidence if necessary, and formulate a mental RFC supported by substantial evidence.

**/s/** Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of August, 2019.